| 38 | 35 |
| 136 | 371 |

## CHANEY'S HEIRS *vs.* CHANEY'S ADM'R.

[FINAL SETTLEMENT AND DISTRIBUTION OF DECEDENT'S ESTATE.]

1. *Sale of decedent's lands, for equitable division; right of dower of heir's widow; jurisdiction of probate and chancery courts.*—Where a decedent's real estate is sold, under an order of the probate court, for the purpose of making an equitable division among his heirs, after the death of one of the heirs, the sale bars the right of dower of the widow of such deceased heir, but does not extinguish her right as dowress: the proceeds of sale stand in lieu of the land itself, and the portion of the deceased heir must be paid to his administrator, for the purposes of administration; but so much thereof as corresponds with her dower interest in the land, must be paid over to the widow, on her executing a suitable bond for the protection of those entitled to the reversion; and on her failure to give such bond, the money must be loaned out, and the interest be paid to her annually during her life; but the probate court is not competent to make and execute the proper decree in such case, and resort must therefore be had to the chancery court.

APPEAL from the Register in Chancery at Camden, on transfer from the Probate Court of Wilcox.

In the matter of the final settlement and distribution of the estate of Emanuel B. Chaney, deceased, who was one of the children and heirs-at-law of Green B. Chaney, deceased, and of whose estate his widow (now Mary J. Nicholson) and Charles Nicholson were the administrators. It appeared on the settlement, that said Green B. Chaney died, intestate, in the early part of the year 1853; that in September, 1853, on the petition of his administrator, the probate court granted an order for the sale of his real estate, for the purpose of making an equitable division among his heirs; that the said Emanuel B. Chaney, one of the heirs, died in October, 1853, leaving a widow, but no children; that his widow administered on his estate, and afterwards married Charles Nicholson; and that the lands were afterwards sold under the said order of the probate court, and the proceeds of sale were distributed among the

parties in interest,—Mr. and Mrs. Nicholson, as adminis-
trators of Emanuel's estate, receiving his share, which
amounted to over $6,000. As Mrs. Nicholson had never re-
linquished her dower interest, if any she had, as the widow
of said Emanuel Chaney, in the lands belonging to Green
B. Chaney's estate, the heirs and distributees insisted be-
fore the register, 1st, that her right of dower, if any ever
existed, was not affected by the sale of the lands under the
order of the probate court, and she was not entitled to any
portion of the money received by her and her husband, as
administrators, arising from the proceeds of said sale ; and,
2d, that, if she was entitled to any portion at all, it was
only for life. The register decided both of these points
against the heirs, and rendered a decree, authorizing Nich-
olson and wife to retain, in right of Mrs. Nicholson, one-
half of the money so received by them. The heirs and
distributees reserved exceptions to the decision and decree
of the register, and they now assign the same as error.

A. R. MANNING, for appellants.
J. L. SMITH, contra.

A. J. WALKER, C. J.—The administrator of the estate
of Green B. Chaney, deceased, obtained an order for the
sale of the land of the estate, for the purpose of equitable
division among the heirs. Before the sale was made in
pursuance of that order, Emanuel B. Chaney, one of the
heirs, died, leaving a widow, but no descendants; and his
estate was solvent. His share of the proceeds of the sale
was paid over to the administrators of his estate. The
court below ordered a distribution of the fund so received,
among the distributees of Emanuel's estate, one of whom
was the widow ; her share being, under the statute of dis-
tributions, one-half.

At the time of Emanuel B. Chaney's death, he was
seized of an undivided share of Green B. Chaney's real es-
tate. Such seizin resulted from the descent to him from
his ancestor. The lands of a decedent are made liable to

his debts by our law, and there are some statutory powers over them placed in the hands of the administrator. Subject to that liability, and to those powers, the land of an intestate descends to his heirs.—*Patton v. Crow*, 26 Ala. 426. The land of Green B. Chaney's estate was not needed for the payment of debts, and was not sold for that purpose. Emanuel B. Chaney was seized of the land as a coparcener, and his widow was entitled to dower.—Park on Dower, 41, 42. It is clearly the law, that the seizin of a coparcener is such that his widow is dowable in the land held in coparcenary. The dower of the widow in the land itself must be, like the descent to the heir, subject to the power of sale, under an order of court, vested in the administrator ; for, by statute, the administrator is required to convey all right, title, and interest, which the deceased had in the lands at the time of his death.—Code, §§ 1770, 1872. The statute prescribing the scope of an administrator's conveyance, forces us to the conclusion that the dower in the land is barred by the administrator's sale ; for the title of the deceased at the time of his death was free from any claim of dower on the part of the heir's widow, and as the title existed in him at his death, so is it required to be conveyed by the administrator to the purchaser. Indeed, if the lands of decedents were sold for distribution, subject to the dower of the wives of the heirs, the effect upon those heirs whose shares were not incumbered by such claim, would be grossly unjust. Those whose shares were not so incumbered would be made to participate equally with the others in the loss resulting from the depreciation of price on account of the outstanding inchoate rights of dower. Therefore, justice and equality among the heirs, as well as the prescribed terms of the administrator's conveyance, require the conclusion, that the right of dower in the land, on the part of the wives of the heirs, is barred by the administrator's sale.

But we can not conclude that the interest of the dowress is destroyed by such a sale. It would not be destroyed if the heirs were to make a private sale, by mutual

consent, for division ; nor if a sale for the same purpose were made under a decree of the chancery court. We can not perceive how a sale, made for the benefit of the heirs, to accomplish the same purpose, in pursuance of the administrator's petition to the probate court, could have the effect of destroying the interest of the dowress. As the wife of an heir is deprived of her claim to a specific charge of her dower upon the land of the ancestor sold by the administrator for division, and as her interest survives the sale, she must, of necessity, be satisfied out of her husband's share of the proceeds of the sale.

It was decided in *Williamson v. Mason*, (23 Ala. 488,) that the money arising from a sale of land, would stand in place of the land, and would go, after the purposes of the administration were satisfied, to the heirs. So, also, we think that the proceeds of the sale of the land must stand to the widow in the place of the land, and she must take an interest in the money equivalent, as near as may be, to her interest in the land. This is very easily arranged, where, as in this case, the husband is dead. The husband having left no descendants, the widow would be entitled to the enjoyment for life of one-half of the husband's share of the proceeds of the sale of the land. Upon the rule settled in *Mason v. Pate's Executors*, (34 Ala. 379,) the widow should be permitted to receive the half of her deceased husband's share, upon her executing a suitable bond for the protection of those entitled in reversion ; and in case of her failure to give bond, the money must be loaned out, and the interest paid over annually to her during her life-time. To the making and execution of the proper decree, the powers of the probate court are, as is decided in the case just noticed, inadequate, and a resort must be had to the chancery court.

While the rule for the ascertainment and security of the widow's share is thus simple, when the husband is dead, we can very clearly perceive that much more difficult questions will be prevented for solution when the court is called upon to lay down a rule, which will secure to the wife of

a living husband her contingent dower interest. We will not anticipate those questions now, but will leave them to be settled when they arise.

We think that Emanuel B. Chaney's share of the proceeds of the sale of the land of his deceased ancestor, Green B. Chaney, was legally paid over to the administrator of Emanuel's estate, and became assets, with which such administrator was chargeable in his representative capacity. At Emanuel's death, his undivided interest in the lands of Green B.'s estate became liable to his debts; and so the share of the money arising from the sale afterwards made, which stood in the place of the land, would be liable to the same debts. It must be, therefore, that such money was payable to the administrator of Emanuel's estate, and that the claim of the heirs for their respective shares of the fund is against the administrator in his representative capacity. The share of the fund produced by the sale of the land, must be divided between the widow and the heirs, in a manner corresponding with their respective interests in the land.

We do not think, that the fund produced by the sale of the land is to be regarded as subject to distribution as personalty, because it has been stamped with that character by the decree against the administrator of Green B.'s estate, in favor of the administrator of Emanuel's estate. That decree simply directs the payment of the money arising from the sale, and determines nothing as to the light in which the money is to be regarded after passing into the hands of the administrator of Emanuel's estate. There is no ground upon which the parties interested can be held estopped by the decree above named from asserting rights in the fund corresponding with their interest in the land which was sold. There is no impracticability in distinguishing the fund arising from the sale of the land, and the argument based upon that supposition is untenable. The share of Emanuel in the land was, after satisfying the purposes of the administration of Green Chaney's estate, liable to the payment of the debts of Emanuel's estate.

So the money, which was substituted for the land, would be assets for the payment of the debts of that estate. For that reason, it was necessary that the money should be deemed assets of Emanuel's administration, and should be receivable of him in his capacity of administrator, and recoverable from him in the same capacity.

Reversed and remanded.