This is an appeal from a judgment quieting title to certain lands in Lowndes County, Alabama. Doris Dickson Plant, Plaintiff/Appellee, filed suit seeking to establish her right and title to lands devised her under the will of her father, Robert S. Dickson, Sr. The Defendants/Appellants are the heirs and descendants of Robert S. Dickson, Sr. (See, however, footnote 1, infra.) Jerry Thornton of Hayneville, Alabama, was appointed guardian ad litem to represent the interests of all unknown persons and all defendants who might be minors, or persons of unsound mind. A default judgment was entered by the court as to all defendants who were not infants or incompetent, or who had not otherwise appeared and consented to the proceedings.
The case was tried without a jury and Plaintiff prevailed. The guardian ad litem's motion for new trial was denied. This appeal followed.[1] We affirm.
 FACTS
Robert S. Dickson, Sr., died in 1949, survived by his wife, Leila T. Dickson, and four children, Leila D. Arthur, Anne D. Kidd, Robert S. Dickson, Jr., and Doris Dickson (now Doris Dickson Plant). His last will and testament devised to Doris Dickson certain real property in the following language:
 "I do hereby will and devise to my daughter Doris Dickson those lands now owned by me, comprising 822 acres more or less, and known as my HAIGLER PLACE, in fee simple, provided, that at her death she leaves bodily issue or heirs of her body; in the event of her death leaving no bodily issue or heirs of her body, then the title to said lands shall revert to my other heirs or descendants, according to the present Laws of Descent Distribution, in the Statutes of Alabama."
Subsequently, by deed dated the 3rd of September, 1957, Robert S. Dickson, Jr., and his wife; Anne Dickson Kidd and her husband; Leila Dickson Arthur and her husband; and Leila T. Dickson, a widow, conveyed to Doris Dickson Plant all of their *Page 1056 
right, title, and interest in the Haigler Place in the following language:
 "[T]he [Grantors] . . . hereby grant, bargain, sell and convey unto [Doris Dickson Plant] all of the right, title, interest and estate which the [Grantors] or either of them, may now own or to which they, or either of them, may hereafter be entitled, in law or in equity, including any right, title, interest or estate which they, or either of them, may now own or hereafter be entitled to by way of reversion or expectancy, or by remainder, whether vested or contingent, or by way of executory devise, under or by virtue of the terms, conditions, or provisions contained in the last will and testament of Robert S. Dickson, Sr. . . . ."
The grantors in this deed were the testator's widow and all of his children and their respective spouses, with the exception of Doris, who was the grantee.
Doris later sold a thirteen-acre tract of the original 822 acres and, in 1967, executed a timber sale contract on the remaining lands to Hammermill Paper Company. She proposed to sell a portion of the lands to General Electric Company in accordance with the terms of a contract for sale dated February 3, 1983. As a condition of the sale, General Electric required that she institute court proceedings to establish her right to the subject lands. This appeal is from the final judgment in that proceeding.
 ISSUES AND CONTENTIONS OF THE PARTIES
Before we begin our analysis, it is important that we refine and state the dispositive issue in the context of the arguments of the parties. These respective arguments are based on a common premise: The interest acquired by Doris was a fee simple subject to defeasance. That is to say, the testator's will devised to his daughter Doris the subject property "in fee simple, provided, that at her death she leaves bodily issue or heirs of her body." If this condition failed, then the testator provided, "title to said lands shall revert to my other heirs or descendants, according to the present Laws of Descent 
Distribution, in the Statutes of Alabama."
Therefore, the ultimate question is: Did the conveyance of all the right, title, and interest in the subject lands by the heirs-at-law of Robert S. Dickson, Sr., determined as of the time of his death, operate to vest in the grantee, under that deed, a fee simple absolute? In other words, was the interest acquired in the subject property by the heirs-at-law (other than Plaintiff), at the time of the testator's death, of such character and nature that, upon their joint conveyance to Doris, she is empowered to convey a fee simple title without further limitations or restrictions? If not, both parties agree that her deed to General Electric will convey an absolute fee simple title only in the event she leaves, at her death, "bodily issue or heirs of her body."
Both parties further agree that the ultimate decision rests on the meaning of the term "heirs or descendants," as that term is used in the subject will. Defendants/Appellants claim that the alternative use of the term "heirs or descendents" manifested an intent to determine the devisees at some future time, i.e., at the date of Doris's death, should she die without issue. Doris on the other hand, argues that these alternatives were intended as two ways of saying the same thing.
 DECISION I
In the absence of clear and unambiguous indications of a different intention to be derived from the context of the will, read in light of the surrounding circumstances, the class described as testator's heirs, or next of kin, or relations, or such persons as would take his estate if he had died intestate, to whom a remainder or executory interest is given by the will, is to be ascertained at the death of the testator. Weil v.Converse, 273 Ala. 495, 142 So.2d 245 (1962); Jones v. Glenn,248 Ala. 452, 28 So.2d 198 (1946); Annot. 49 A.L.R. 174 (1927); Annot. A.L.R. 602 (1940); Annot. 169 A.L.R. 207 (1947); 80 Am.Jur.2d Wills *Page 1057 
§§ 1437, 1438 (1975); 96 C.J.S. Wills § 695 (5)(b) (1957).
Although neither of the parties presents us with case law explicitly stating that the term "descendants" is equivalent to the term "heirs" (nor can we find any), we hold the trial court properly found that Robert S. Dickson, Sr., equated the two terms and meant such "heirs" and/or "descendants" to be determined as of the date of his death.
Looking at the will as a whole, we note that only in that part of the will devising the land to Doris does the testator not explicitly designate at which time his "heirs" and "descendants" should be ascertained. In every other paragraph in which a future interest is devised, the testator plainly states it is his wish that upon failure of the initial gift, the remainder shall "revert to the then heirs of my estate." (Emphasis supplied). The provision devising the Haigler Place to Doris merely says: "shall revert to my other heirs or descendants." (Emphasis supplied.) Moreover, the concluding language of this sentence states, "according to the present
Laws." (Emphasis supplied.)
Because of this discrepancy and the obvious intent of the testator, we agree with the trial court that "heirs" etc. of the testator are to be determined at the date of his death. Therefore, upon failure of issue at Doris's death, the widow and remaining three children of the testator (or their heirs or devisees), subject to the exercise of their right of intervivos alienation, if any, would take a fee simple absolute.
 II
Before we determine whether the testator's heirs (the grantors in the September 3, 1957, deed to Doris) can transfer their "future interest," we must classify that interest. As we have already noted, both parties agree that the language employed in the will operated to give Doris a fee simple subject to defeasance if she died without surviving issue. The parties disagree, however, on the effect that the conveyance by the heirs-at-law of Robert S. Dickson, Sr., has on the Plaintiff's title. The guardian ad litem contends that the grantors' interest was an executory interest, and, is, by definition, indestructible. Doris, on the other hand, while not disputing the fact that the interests held by the grantors are executory in nature, maintains, by inference, that such interests are alienable inter vivos, descendable and devisable.
Only two types of future interests can be created in a transferree, namely, remainders and executory interests.
 "A remainder is a future interest having the following characteristics: (a) it is created in a transferree; (b) it is created simultaneously with a prior estate; (c) it is so limited that it can become a present interest at the termination of the prior interest; (d) the prior interest must be of a lesser duration than the interest of the transferor. Remainders are classified as vested and contingent." L. Simes, Handbook of the Law of Future Interests 19 (2d ed. 1966).
 "[A]n executory interest is distinguished by the following characteristics: (a) it is a nonvested interest; (b) in a transferee; (c) which is so limited that it will vest on the happening of a condition, or on the occurrence of an event which is certain to take place, and (d) which with the exception of the executory interest after a determinable fee or a fee simple conditional, vests in derogation of a vested interest." Simes, at 25.
At common law, both contingent remainders and executory interests were considered mere possibilities and were wholly inalienable. R. Boyer, Survey of the Law of Property, (3d ed. 1981). The majority view today, however, is that such future interests are considered presently existing things and are alienable, descendable, and devisable. 28 Am.Jur.2d Estates § 378 (1966).
The general proposition that contingent remainders and executory interests are alienable is subject to exception: If, for example, a future interest runs to an unborn person, then there is no one to make the conveyance. Additionally, some courts *Page 1058 
follow the old English view that these interests are inalienable. See Simes, at 71. Those courts adhering to the rule of inalienability generally recognize three exceptions: First, if the attempted alienation is with warranty, or other provision which would create an estoppel, the property passes when the contingency occurs; second, if the attempted alienation is with valuable consideration, equity will treat it as a contract to convey and may give specific performance; third, if the alienation is by way of a release, the release puts an end to the future interest. Thus, if "land has been devised `to A and his heirs, but if A die without children, then to B and his heirs,' B may release his executory interest to A." Simes, at 72.[2]
As can readily be seen from the preceding example, the executory interests held by Robert S. Dickson, Jr., Leila D. Arthur, Anne D. Kidd, and Leila T. Dickson, were future interests subject to alienability at the time the deed was executed devising all the grantors'"right, title and interest" to Doris. If Doris had died with children surviving her, regardless of the interests conveyed by the deed, she could have devised a fee simple absolute to anyone she wished. But if Doris had died without issue surviving her, she would have had nothing. Because of the release of the future interests held by her sisters, brother, and mother, however, Doris now has a fee simple absolute and can sell the property to whomever she desires with a clear title.
In summary, we need not, and have not, decided as between the earlier common law rule disfavoring alienability of future interests and the modern trend favoring alienability. Assuming, without deciding, this Court's adherence to the general rule of inalienability as to such interests, we have applied the well recognized "release" exception. The rationale for this exception is obvious. The public policy which opposes alienation to a stranger is in favor of the release. In other words, where the reason for applying the rule no longer exists, the exception, and not the rule, obtains.
Thus, the judgment of the trial court quieting title to the lands in Doris Dickson Plant is due to be, and hereby is, affirmed.
AFFIRMED.
TORBERT, C.J., and MADDOX, SHORES and BEATTY, JJ., concur.
[1] Although we have retained the original style of the case, the named Appellant is not a party to the appeal. The only Appellants, in actuality, are those heirs and descendants of Robert S. Dickson, Sr., who are either unknown, or are minors, or are of unsound mind, and are represented by the guardian ad litem, who appeals on their behalf.
[2] As Professor Simes points out, only the last of these (release) is a true exception; the first two are merely instances where other legal principles nullify the operative effect of inalienability.